

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
INDRAPAUL ROOPLALL,                                                  :        12-CV-1542 (ARR)
                                                                     :
                            Petitioner,                              :        NOT FOR ELECTRONIC
                                                                     :        OR PRINT PUBLICATION
        -against-                                                    :
                                                                     :        OPINION AND ORDER
PATRICK GRIFFIN,                                                     :
                                                                     :
                            Respondent.                              :
                                                                     :
------------------------------------------------------------------- X

ROSS, United States District Judge:

        Petitioner Indrapaul Rooplall ("petitioner" or "Rooplall"), a pro se prisoner, petitions this

court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rooplall was tried in the

Supreme Court of New York, Queens County, on one count of Attempted Murder in the Second

Degree, two counts of Assault in the First Degree, and one count of Criminal Possession of a

Weapon in the Fourth Degree based on an incident in which he stabbed his wife multiple times.

A jury acquitted Rooplall on the Attempted Murder count, but convicted him on the two Assault

counts and the Criminal Possession of a Weapon count.  He was sentenced to twelve years.

Rooplall now challenges his conviction, alleging several grounds for relief, including: (1) The

People failed to sustain their burden to prove by a preponderance that Rooplall was competent to

stand trial; (2) Rooplall's lawyer provided ineffective assistance of counsel by failing to

investigate and present properly evidence of intoxication; and (3) Rooplall's lawyer provided

ineffective assistance of counsel by failing to raise a defense of Extreme Emotional Disturbance

("EED").  In his reply brief, Rooplall raises a new issue: that the Grand Jury never indicted him

1

for Attempted Murder in the Second Degree. He seeks to amend his petition and provide supplemental briefing on this issue. Because the indictment makes clear that Rooplall is mistaken about this issue, I deny his request to amend and provide supplemental briefing. Further, for the reasons explained below, I dismiss the petition.

## BACKGROUND

I.    *The Crime*

On August 21, 2006, Neisha Rooplall was working at Clear Choice, a discount store in Queens. Tr. 255.[1] At approximately 1:20 in the afternoon, Ms. Rooplall's husband, Indrapaul Rooplall, appeared and began stabbing her with a kitchen knife. Id. at 255-57, 230-31. Rooplall stabbed his wife at least four times, id. at 231, before another employee, Mark Doe-Tettah, chased him out of the store, id. at 232-33. Doe-Tettah chased Rooplall down the street and tackled him to the ground. Id. at 233. He then called the police. Id. When police officers arrived, one of the officers secured Rooplall and the knife, while the other went into the store. Id. at 292-93. After the first officer handcuffed Rooplall and placed him in a patrol car, Rooplall stated repeatedly that he "did it because he couldn't take it anymore." Id. at 294-95. Meanwhile, the second officer approached Neisha Rooplall, who had "blood all over her body." Id. at 319. She turned to the officer, "took her hand away from her face, and what seemed to be her eyeball was hanging out of her eye socket. At that point, blood profusely . . . spurted out of her head and she fell backwards on the floor and she fainted." Id. Ms. Rooplall was taken to the hospital where she underwent surgery, id. at 340, and was released a few days later, id.

---

[1]Unless otherwise indicated, "Tr" refers to the trial transcript.

II.   *Pre-Trial Proceedings*

Rooplall was tried in the Supreme Court of New York, Queens County, before the Hon.

Barry Kron. Id. at 1. At a pre-trial suppression hearing, Justice Kron suppressed one instance of

Rooplall's statement, "I did it because I couldn't take it anymore," June 6, 2007 Suppression

H'rg Tr. 24, as an unwarned statement given in response to custodial interrogation. Id.

However, Justice Kron held that Rooplall's continuing utterance of the phrase was a spontaneous

statement and was therefore admissible. Id.

In a subsequent hearing, Rooplall's attorney made an application to have his client be

examined for competence to stand trial, pursuant to N.Y. Crim. Proc. L. art. 730. See Aug. 29,

2007 H'rg Tr. 2-3. The court asked Rooplall if he knew what he was being charged with. Id. at

4. Rooplall replied, "No." The court said, "You have completely no idea why you are here?" Id.

Rooplall replied, "No." The court then said:

> I find this to be totally ridiculous, but that having been said he wants to
> generate a 730 exam and go through this let him go ahead and play. You are not
> going anywhere. This case is not going away. You are not going to [make] this
> disappear by simply putting on a show indicating that you do not remember
> anything about anything.
>     I just find this an unconvincing dilatory ruse to prevent Mr. Rooplall from
> dealing with the fact that he is charged with the attempted murder of his wife.

Id. at 4-5. Nevertheless, the court ordered that doctors examine Rooplall and he be given a

hearing on the question of his competence. Id. at 5-6.

The competence hearing was held before a different judge, the Hon. William Erlbaum.

Dec. 3, 2007 Hr'g Tr. 1. After an unsuccessful motion to recuse Justice Erlbaum, id. at 3-10, the

defense called Dr. Alan Perry, id. at 11. Dr. Perry had previously examined Rooplall twice and

had generated a report stating his findings. Id. at 12-13. At the hearing, he testified that he

3

learned from Rooplall and Rooplall's wife that Rooplall had a history of alcohol abuse, which

included drinking from adolescence, drinking for long periods of time, such as a stretch of three

days, and experiencing symptoms of delirium tremens and blackouts in his native Guyana. Id. at

16-18. Dr. Perry testified that, based on his interview with Rooplall and the results of R-Bans

tests administered by students working under his supervision, it was his opinion that Rooplall

was not fit to stand trial. Id. at 18-21. Dr. Perry explained the basis for this opinion as follows:

> I saw a certain rigidity in his thinking. There was a certain kind of inaccessibility
> to things that were being said to him. It didn't seem that he was focusing on
> important issues that he would need to focus on when [his attorney was] present
> and [was] offering him some advice and some counseling as to his case, and it just
> seemed that he was not taking the information in. He wasn't processing this
> information. He wasn't listening to [his attorney] and he just wasn't responding
> in an appropriate way to the kinds of things that [his attorney was] saying to him
> concerning his legal options and, therefore, I thought he was not fit.

Id. at 21. On cross-examination, Dr. Perry elaborated on this explanation by confirming that he

had written into his report, "Defendant seems to have great difficulty with the idea that he can't

remember the instant offense because of alcohol intoxication. It is not much of a defense." Id. at

58. Dr. Perry specified that the interaction in which Rooplall was not "responding in an

appropriate way" to his counsel's advice concerned Rooplall's attorney trying to convince him

that an intoxication defense was unlikely to prevail and he should take a plea. Id. at 59-61.

However, Dr. Perry admitted that he did not know that Rooplall's attorney had, in fact, filed a

"Notice of defense" indicating that he would argue that Rooplall's intoxication negated his

ability to form intent. Id. at 55, 59-61. Dr. Perry testified later that he was unaware when he

examined Rooplall and wrote his report that the law allowed for intoxication to be a defense in

certain instances. Id. at 115. Dr. Perry also testified that he believed Rooplall understood the

4

roles of the participants in the trial, id. at 67, and knew that he could get twenty-five years if he went to trial and lost, id. at 72-73.

In addition to Dr. Perry's testimony, the court admitted the report of Dr. Steven Rubel, who examined petitioner with Dr. Perry and reached the same conclusion regarding petitioner's fitness to stand trial. Id. at 157-58; see Answer, Ex. A. At the close of the competence hearing, defense counsel argued that the burden was on the People to show that petitioner was competent, yet the People did not call any expert witness of their own. Id. at 174. The court responded, "Nobody owns witnesses. Doesn't matter who calls the witness. A witness gives testimony. . . . I'll have to decide what inferences can be drawn from the testimony not who called the witness." Id. at 175.

Justice Erlbaum issued a written memorandum opinion on March 24, 2008. See Answer, Ex. C. He acknowledged Dr. Perry's finding that Rooplall had a cognitive impairment due to neurogenic damage from alcohol abuse. Id. at 5. However, Justice Erlbaum noted that Dr. Perry's primary basis for finding petitioner unfit was petitioner's rigid persistence in wanting to pursue an intoxication defense despite his attorney's advice. Id. at 12. This finding, Justice Erlbaum held, was based on incomplete information, since Dr. Perry was not aware that a defense based on intoxication existed. Id. at 14. Justice Erlbaum further found, "Dr. Perry . . . is judging the defendant based on the defense counsel's view of the case." Id. at 18; accord id. at 22, 23. Therefore, the court held, "since the doctor was unaware of the viability of the intoxication defense, his finding that the defendant is rigid in his thinking because he wants to pursue this defense, can not [sic] be adopted by the Court." Id. at 23. Justice Erlbaum further noted that Dr. Perry's finding of alcohol abuse was based primarily on self-reporting by

petitioner and petitioner's wife, and may not be accurate. Id. at 24. The court held, "Therefore, based on the totality of the circumstances, and the compelling evidence demonstrating that the defendant is indeed competent to proceed to trial, the Court will not find the defendant unfit based entirely on upon an unsupported assumption," id. at 24-25, and denied petitioner's art. 730 motion, id. at 25.

III.    *Trial*

The case then returned to Justice Kron for trial. At trial, Neisha Rooplall and her co-worker, Mark Doe-Tettah, testified regarding the stabbing. Tr. 226-283. Ms. Rooplall testified on cross-examination that her husband had a very severe drinking problem throughout their twenty-two years of marriage. Id. at 268. She testified that he received treatment for alcoholism in Guyana and suffered from blackouts. Id. at 278. She also testified that two days prior to the crime, she had a conversation with petitioner in which petitioner told her he intended to leave her. Id. at 274. The People next called Police Officers Brian Goldberg and Martin Jurewicz, who responded to the crime. Id. at 286-327. Both officers testified that petitioner did not appear intoxicated when they arrested him. Id. at 295-96, 321.[2] The People also called the surgeon who treated Neisha Rooplall, id. at 332-48, who testified that had he not performed surgery, Ms. Rooplall would have been severely deformed, but would have survived, id. at 343. Following the surgeon's testimony, the People rested. Id. at 349.

In the defense case, petitioner testified on his own behalf. Id. at 350. He stated that he drank ten to twelve alcoholic drinks per day, and experienced blackouts during which he did not

---

[2]Mark Doe-Tettah also testified that he did not smell any alcohol on petitioner's breath and could understand him when he spoke. Id. at 233-34.

know what he was doing. Id. at 353-54. He also testified that prior to the crime, he caught his wife having an affair by observing her having sex with another man in a car, id. at 356, but that he and his wife had tried to work out their marital issues, id. at 357. Rooplall testified that on the day of the crime, he went to work but was sent home at 7:30 in the morning for being drunk. Id. at 357-58. When he returned home he continued to drink rum and beer. Id. at 358. He stated that he did not remember leaving home later that day and did not remember stabbing his wife. Id. When asked by defense counsel whether he remembered wanting to hurt his wife, he stated, "No. I love my wife." Id. at 359.

The defense next called Jennifer Rooplall, daughter of petitioner and Neisha Rooplall. Id. at 384. Jennifer testified that her father drank frequently in Guyana and had tried twice to commit suicide. Id. at 385-86. She testified, "Sometimes he would just blackout. When he wake up he going to want to know where he is. He don't remember going into the room, or he don't remember coming home." Id. at 387. She also corroborated Rooplall's testimony that he had seen his wife having sex with another man, and stated this man was Neisha Rooplall's boss. Id. at 387-88. Jennifer stated that she saw her father on the morning of August 21, 2006, and he was drinking so much that "he couldn't even walk in the house." Id. at 389. Around 11:00 AM he told her he was going to take a nap and she saw him go into his room at 11:30 or 12. Id. That was the last time she saw him that day. Id. at 389-90.

Following Jennifer's testimony, the defense called Dr. Perry and Dr. Rubel who testified about the effects of alcohol on the brain, id. at 410-11, 433-34, and their view, based on their examination, that petitioner suffered from cognitive impairment related to alcohol abuse, id. at 414, 435. The defense then rested. Id. at 443.

7

Following closing arguments, the jury charge, and deliberations, the jury found petitioner not guilty of Attempted Murder in the Second Degree and guilty of two counts of Assault in the First Degree, as well as Criminal Possession of a Weapon in the Fourth Degree. Id. at 507. At a subsequent sentencing hearing, the court sentenced Rooplall to a term of twelve years. Sentencing Hr'g Tr. 14. Rooplall appealed, raising one issue: that the People failed to sustain their burden to prove by a preponderance that he was competent to stand trial when both medical experts concluded he was not competent. See Dkt. #1, at 49-56. The Appellate Division affirmed the conviction, holding:

> Contrary to the defendant's contention, the Supreme Court did not err in determining, after a hearing, that the defendant was competent to stand trial. The burden of proof is on the prosecution to establish a defendant's competence, and the burden requires that fitness to stand trial be established by a preponderance of the evidence. We are satisfied that the prosecution met its burden and perceive no basis upon which to disturb the Supreme Court's determination.

People v. Rooplall, 903 N.Y.S.2d 901, 901 (App. Div. 2010). The Court of Appeals denied leave to appeal. People v. Rooplall, 935 N.E.2d 825, 825 (N.Y. 2010). Rooplall then filed a motion to vacate pursuant to N.Y. Crim. Proc. L. § 440.10, raising his ineffective assistance of counsel claim, which was denied by the Supreme Court. See Dkt. #1, at 167-172. Leave to appeal was denied. Id. at 164. Rooplall timely filed the instant petition. See id. at 6.

## DISCUSSION

I.    *Standard of Review*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

8

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 784 (2011).

II.    *Petitioner's Claims*

    a.    <u>Competence to Stand Trial</u>

Petitioner's first claim for relief is that the trial court erred in concluding (and the

Appellate Division erred in affirming) that the People had sustained their burden in proving by a

preponderance that petitioner was competent to stand trial.  He argues that the two psychiatric

experts who examined him found he was not fit to stand trial.  Since the testimony of one of

these experts and the report of the other were the only evidence adduced at the hearing, according

to petitioner, the court could not "override the unanimous medical testimony," Dkt. #1, at 11, and

find petitioner competent.  Essentially, petitioner contends that the trial court improperly shifted

the burden to him to prove incompetence and arbitrarily determined that he was competent to

stand trial.

"It is well established that the Due Process Clause of the Fourteenth Amendment

prohibits the criminal prosecution of a defendant who is not competent to stand trial." <u>Medina v.</u>

<u>California</u>, 505 U.S. 437, 439 (1992); <u>accord</u> <u>Drope v. Missouri</u>, 420 U.S. 162, 171 (1975); <u>Pate</u>

<u>v. Robinson</u>, 383 U.S. 375, 385 (1966).  However, the Supreme Court has held that, in a

competency hearing, "the allocation of the burden of proof to the defendant does not offend due

process." <u>Medina</u>, 505 U.S. at 452; <u>see</u> <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 355 (1996) ("[A]

State may presume that the defendant is competent and require him to shoulder the burden of

proving his incompetence by a preponderance of the evidence.").  Accordingly, while New York

law allocates the burden to prove competence to the prosecution, <u>see</u> <u>People v. Mendez</u>, 801

N.E.2d 382, 384 (N.Y. 2003), failure to allocate the burden as such would not, in itself, be

grounds for habeas relief.  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) ("[F]ederal habeas

10

corpus relief does not lie for errors of state law."). An error in state law may, however, be grounds for habeas relief when the error "result[s] in [a] cognizable violation[] of a constitutional right to due process." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

Here, there was no error that would implicate petitioner's federal constitutional rights. While both Dr. Perry and Dr. Rubel concluded that Rooplall was unfit to stand trial, their conclusions were based, in large part, on their assumption that an intoxication defense was not just a long shot, but was not a viable defense at all. As Dr. Perry admitted, he was unaware that evidence of intoxication could be presented to negate the intent element of the offense. Further, he testified that Rooplall knew that he faced a twenty-five year sentence if he went to trial. Rooplall's insistence on an intoxication defense could reasonably be seen as a disagreement with his attorney about strategy rather than an inability to process his attorney's advice. Although both experts opined that Rooplall's rigidity reflected a cognitive defect, the court was not bound by their opinions. See Maggio v. Fulford, 462 U.S. 111, 118 (1983) (per curiam) (trial court not obligated to credit ultimate conclusions of expert in competency hearing, even when expert was "unimpeached"); Mendez, 801 N.E.2d at 385 ("[A] competency inquiry involves a legal and not a medical determination . . . the court was empowered to override the psychiatric opinion."). Petitioner relies on People v. Jordan, 324 N.E.2d 131 (N.Y. 1974), in which the New York Court of Appeals reversed a finding that the defendant was competent despite "essentially undeviating testimony of defendant's serious mental incapacity." Id. at 133. But the record in Jordan also involved "three judicial determinations that defendant was incapable of standing trial," id. at 131, in addition to mixed opinions by experts regarding competence, id. Jordan is therefore distinguishable from petitioner's case.

11

The evidence presented in the competency hearing supported the trial court's finding that petitioner was competent. As the court noted, petitioner was "able to understand the roles of the players involved in a trial, . . . he understood what was explained to him . . . [he] spoke coherently when talking to the doctor, and demonstrated no impaired ability to carry out motor activities, or visual spatial activities." Answer, Ex. C, at 16. The fact that this evidence came from witnesses called by the defense is of no moment, since, as the trial court correctly noted, "Nobody owns witnesses." Dec. 3, 2007 Hr'g Tr. 175; cf. Pariso v. Towse, 45 F.2d 962, 965 (2d Cir. 1930) (L. Hand, J.) ("[I]t can make no difference who called the witness."). Moreover, the contrary evidence – supporting a finding of incompetency – was subject to multiple interpretations. The weight that would normally be accorded to the opinion of psychiatric experts was justifiably diminished in this case by the experts' ignorance of the intoxication defense. Without knowledge that such a defense existed and could be used in petitioner's case, petitioner's refusal to take counsel's advice not to go to trial appeared to Drs. Perry and Rubel to be the result of cognitive impairment. But understanding the full legal picture permitted the trial court to see the same disagreement instead as a rational (if foolhardy) dispute about defense strategy. "[A] trial judge's findings with respect to competency are generally accorded great deference and, even on direct review, will be upheld 'unless clearly erroneous.'" Bisnett v. Kelly, 221 F. Supp. 2d 373, 386 (E.D.N.Y. 2002) (quoting United States v. Nichols, 56 F.3d 403, 411 (2d Cir. 1995)). Under the even higher standard of deference required by AEDPA, I cannot say, based on this record, that the state court's determination was contrary to, or an unreasonable application of, clearly established Federal law. Petitioner's competency claim must therefore fail.

12

b.     Ineffective Assistance of Counsel

1.     Legal Standard

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the familiar two-prong test by which ineffective assistance of counsel claims are adjudicated. Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A court need not decide both prongs of the Strickland test if the showing on one is insufficient. See id. at 697. In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). In so doing, it must "affirmatively entertain the range of possible reasons [petitioner]'s counsel may have had for proceeding as they did." Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1407 (2011) (internal citation and quotation marks omitted).

2.     Application

Although petitioner raises one claim of ineffective assistance of counsel, he asserts two errors: (1) that counsel followed petitioner's direction in presenting an intoxication defense and failed adequately to investigate the basis for such a defense; and (2) that counsel failed to present a defense of Extreme Emotional Disturbance (EED), which was supported by the trial testimony. The trial court, in hearing petitioner's § 440.10 motion, determined that the claims were

13

procedurally barred because they could have been raised on direct appeal. Dkt. #1, at 168.[3] Such a procedural bar is an independent and adequate state law ground that forecloses federal habeas relief absent a showing of cause and prejudice to excuse the procedural default. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). However, because it is clear that petitioner's claims would not succeed on the merits, I simply address the merits and bypass the question of whether petitioner has demonstrated cause and prejudice. See Johnson v. Artuz, No. 00-CV-6106T, 2006 WL 1144513, at *9 (W.D.N.Y. May 1, 2006) ("Because the Court finds that it is more efficient to simply dispose of Johnson's claim on the merits than to address the more complicated issues of exhaustion and procedural default, the Court will proceed to the merits of the claim."); see also McKinnon v. Lockhart, 921 F.2d 830, 833 (8th Cir. 1990) ("In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine.").

### A.  Intoxication Defense

Petitioner argues that counsel failed to conduct a pretrial investigation to find evidence that would have supported the intoxication defense. See Dkt. #1, at 3. But despite listing individuals counsel supposedly should have interviewed – including petitioner's "family members, relatives, friends, employer, including his wife," id. at 17-18 – petitioner does not identify any additional information these interviews would have uncovered beyond what was presented at trial. No fewer than five witnesses testified about petitioner's history of alcoholism: petitioner, petitioner's wife, petitioner's daughter, Dr. Perry, and Dr. Rubel. Four of these witnesses were called by defense counsel (and two plainly fit into the categories identified by

---

[3]The trial court also found them to be without merit. Id. at 172.

14

petitioner as witnesses counsel should have interviewed). Two of these witnesses testified about petitioner's intoxication on the day of the crime. Further testimony supporting the intoxication defense therefore would have been cumulative. There is no reasonable probability that the jury would have credited the intoxication defense after hearing more of the same evidence from additional witnesses. Accordingly, even assuming counsel's investigation was deficient, petitioner cannot establish prejudice as required by Strickland, 466 U.S. at 694.

### B.      Extreme Emotional Disturbance

Petitioner similarly cannot establish prejudice on his claim that counsel should have presented an EED defense. Under New York law, EED is a partial affirmative defense to intentional murder. N.Y. Penal L. §§ 125.25(1)(a), 127.27(2)(a). This statutory defense "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder." Patterson v. New York, 432 U.S. 197, 207 (1977); see DeLuca v. Lord, 77 F.3d 578, 585 (2d Cir. 1996) ("A defendant's proof that the killing occurred under the influence of an extreme emotional disturbance does not lead to acquittal, but reduces the crime upon conviction from murder to manslaughter in the first degree."). Instead, a finding of EED may coexist with a finding that the defendant had an intent to kill and, if found, mitigates the intentional killing. Here, the jury plainly found petitioner did not have an intent to kill because it acquitted petitioner of attempted second-degree murder.[4] Accordingly, the mitigation available through an EED defense would not apply to petitioner's convictions for Assault in the First Degree, which respectively require intent to commit serious physical injury, N.Y. Penal L. § 120.10(1), and

---

[4]The New York courts have extended EED to attempted murder cases. See, e.g., People v. White, 510 N.Y.S.2d 329, 330 (App. Div. 1986).

15

intent to disfigure, id. § 120.10(2).  See People v. Charles, 821 N.Y.S.2d 878, 879-80 (Sup. Ct. 2006) (holding EED defense does not apply to charge of Assault in the First Degree).  Because petitioner was acquitted of the attempted murder charge, there is no reasonable probability – indeed, no legal possibility – that had counsel presented an EED defense, the result of the trial would have been any different.

Because petitioner's ineffective assistance of counsel claims are without merit, the state courts' rejection of them on the merits was neither contrary to, nor an unreasonable application of, clearly established Federal law.  Accordingly, habeas corpus relief must be denied.  28 U.S.C. 2254(d)(1).

        c.      Defective Indictment

In his reply brief, petitioner states, "Petitioner respectfully submits this request for Amended and Supplemental pleading on the ground that the State court held a trial without having Subject-Matter Jurisdiction over the Attempted Murder charges –because the Grand Jury of the County of Queens never indicted Petitioner for Attempted Murder in the Second Degree." Dkt. #19, at 3.  Petitioner provides a partial transcript of the grand jury minutes with his reply brief, but not a copy of the indictment itself.  Putting to one side the fact that petitioner raised this issue in his reply brief and not in his original petition, the issue has not been raised in the state courts.  Petitioner acknowledges as much, stating, "It is very important for this Court to note that Petitioner does not raised [sic] in ANY of the lower courts as well in this Court the underlying jurisdictional argument."  Id.  AEDPA provides, however, that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in courts of the State."  28 U.S.C. § 2254(b)(2).  Here, petitioner's

claim is plainly without merit, as the indictment itself lists Attempted Murder in the Second

Degree as count one.  See Dkt. #22, at 1-2.  Accordingly, petitioner's request for "Amended and

Supplemental pleading" is denied.

## CONCLUSION

For the foregoing reasons, the petition is denied.  As petitioner has failed to make a

substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

28 U.S.C. § 2253(c)(2).  The Clerk of the Court is directed to enter judgment accordingly and

close the case.

SO ORDERED.

s/ ARR

_____
Allyne R. Ross.
United States District Judge

Dated: June 3, 2013
       Brooklyn, New York

**Service List:**

Indrapaul Rooplall
08-A-3435
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733